JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

ANNA TRYON PLETCHER (CABN 239730)
PHILIP KEARNEY (CABN 114978)
Assistant United States Attorneys
   450 Golden Gate Ave., Box 36055
   San Francisco, California 94102
   Telephone: (415) 436-7200
   Fax: (415) 436-7234
   E-Mail: anna.pletcher2@usdoj.gov
        philip.kearney@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>CHARLES REDDEN,<br><br>    Defendant. | No. CR 10-0305 VRW<br><br>**UNITED STATES' TRIAL MEMORANDUM**<br><br>Date:  July 1, 2010<br>Time:  2:00 p.m. |

Pursuant to this Court's Order for Criminal Pretrial Preparation and Criminal Local Rule 17-1(b), the United States hereby files the following Trial Memorandum.

**I.    LEGAL BASIS FOR THE CHARGES**

On April 29, 2010, the Grand Jury issued a Superseding Indictment charging the defendant with three counts of mailing threatening communications in violation of 18 U.S.C. § 876(c) and one count of threatening a witness in violation of 18 U.S.C. § 1512(a)(2).

The elements of a § 876(c) offense are: (1) that the defendant knowingly deposited or caused to be deposited in the mail, for delivery by the United States Postal Service (2) a threat to injure someone, and (3) that the defendant did so with the specific intent to threaten.

UNITED STATES' TRIAL MEMORANDUM
CR 10-0305 VRW

The elements of a § 1512(a)(2) offense are (1) that the defendant knowingly used the threat of physical force against a person; (2) with the specific intent to influence, delay, or prevent the testimony of a person in an official proceeding; (3) that the defendant knew or should have known that the official proceeding was pending or was likely to be instituted; and (4) that the official proceeding was a federal proceeding.

## II.   UNITED STATES' CASE IN CHIEF

During its case-in-chief, the Government expects to present testimonial and documentary evidence supporting the following facts.

### A.   Count 1 (18 U.S.C. § 876(c))

Suzanne Hicks, 59, is a Counselor and Program Director at the New Bridge Foundation ("New Bridge"), a nonprofit chemical dependency and mental health treatment facility. A former New Bridge client herself, she has been on the staff for 15 years. Hicks met Redden when he came to New Bridge in February 28, 2009. She was his case manager who oversaw his treatment program, attended therapy sessions with him, and made sure that he was fulfilling his obligations. On April 10, 2009, Redden was granted permission to leave New Bridge to go to a doctor's appointment. He did not return. He was arrested a week later, and despite asking to return to New Bridge, was sent back to prison for violating the conditions of his supervised release.

On August 26, 2009, Hicks was sorting through files in her office when she came across an unopened letter from the defendant postmarked June 15, 2009 ("June 15, 2009 Letter"). The letter was hand-addressed to Hicks at her place of work: New Bridge Foundation, 1820 Scenic Ave, Berkeley, CA. The return address, also handwritten, was:

> Charles Redden
> UHN 513
> 5325 Broder Blvd
> Dublin, CA 94568

5325 Broder Blvd, Dublin, CA 94568 is the address of the Santa Rita jail, where the defendant was and is currently incarcerated. UHN 513 was and is the defendant's jail identification number. The letter stated:

> Check this out you no good nigger loving bitch I poured my heart and soul into the program only for you not to accept me back. I bet you people were about to put me on a

UNITED STATES' TRIAL MEMORANDUM
CR 10-0305 VRW                              2

sex contract with Anna B, but that just shows how fucking retarded you people are, because it was _ odd G who was my lover, and who was fucking me everyday sometimes twice a day

You people really fucked me over, but its you Suzanne who is going to pay as soon as I'm back on the streets, so you had better watch your back real good.  However, I will tell you a little of what's in store for you.  I'm going to kidnap you and take you to an obscure location.  You aren't going to be able to wear any clothes, and I'm going to keep you high on crystal meth while I fuck you in every hole you got.  I'm going to treat you like the true whore you really are you fucking tramp.  Maybe I'll cut your nipples off, and then when I'm tired of you, and your pussy, and ass are wore out I'm going to put a gun to your head, and pull the trigger.  However, before your body is cold I'm going to fuck you in the ass one last time.

That's your fate you fucking tramp

Fucking slutty ass whore

**B.    Count 2 (18 U.S.C. § 876(c))**

On or about January 4, 2010, Hicks received another handwritten note in the mail with the same return address, as the June 15, 2009 letter.  This time, the envelope was addressed to Ms. Hicks' home.  This letter stated:

I [illegible] where you live

Somebody is watching you!!

795-6587

Suzann,

Check this out you fucking slutty ass bitch.  I just thought you should know that you are in my thoughts, and I bet you've been dreaming about this big Dick fucking you in every position you can think of.  I'd tear your pussy, and ass up.

However, since I'm tied up at the moment I paid this black dude who I know for a fact has a 10" of fat dick for you along with a .357 to blow your fucking head off when he's thru, which wont be for a week to ten days after pussy, ass, and mouth are used up.  Have fun you slutty ass cunt!  He's already watching you.

Ha Ha Ha

**C.    Counts 3 and 4[1] (18 U.S.C. § 876(c) and 18 U.S.C. § 1512(a)(2))**

Darcy Garrigan, 40, lives in Fernley, Nevada in her father's house with her father, age 65, her daughter, age 17, and her son, age 9.  She is divorced and works as a cashier at a Seven-Eleven convenience store.  Garrigan and the defendant met in September 2009 through an online

---

[1]Counts 3 and 4 each stem from the same mailing made on February 10, 2010.

UNITED STATES' TRIAL MEMORANDUM
CR 10-0305 VRW                              3

dating service called "plentyoffish.com." The defendant told her, falsely, that his mother lived in Fernley, Nevada, he was a retired naval officer, and he was writing a book. They dated for about a week in September 2009. During that time, the defendant visited Garrigan's father's house three or four times. He had dinner with her family and stayed overnight twice. He also hand-wrote a will that he gave to Garrigan. The relationship ended when, on or about September 19, 2009, Garrigan allowed the defendant to borrow her truck, purportedly to visit his mother in Fernley, Nevada. The defendant then stole $200 and a firearm from Garrigan's purse and fled to California in her truck. Garrigan promptly reported the incident to the Lyon County Sheriff's Department.

At the time of these events, the defendant was supposed to be serving time on supervised release at Cornell Corrections Center in San Francisco. The probation officer filed a Petition for Arrest Warrant based on the alleged theft. The defendant was subsequently arrested and a hearing on the alleged supervised release violations was scheduled for February 25, 2010. Garrigan had no further personal contact with the defendant. However, she did receive a subsequent letter on February 10, 2010 which the Government contends was authored by the defendant.

Garrigan received the mailing at her home address in Nevada. The letter carried the following return address:

>   Charles Redden
>   UHN 513
>   5325 Broder Blvd
>   Dublin, CA 94568

The letter stated, in part:

> Dear Darcy,
>
> I really want you pay close attention to what I'm about to say. If you have any inclination of coming down here to testify you'd better think twice. Actually, what you had better do is call Deputy Tustin at Lyon County, and recant your story. Tell him you lied about everything just to get me in trouble, because if you show up in the courtroom

on the 25th of this month[2] I'm going to tell you what's going to happen. First, I'm going to tie you and Felicia up, and make you watch me blow your father, and sons head off. Then I'm going to untie Felicia, and while at gun point I'm going to make you watch her suck my dick. I'm going to cum all over her face, and make you like it off. Next, I'm going to make you eat your daughter's pussy, until you make her cum. I'm then going to fuck her like she'd only dreamed. I want the pussy, and the ass, and when I feel her getting ready to cum, I'm going to shoot her between the eyes. However, I've got a feeling she'll be better in bed than you, then again maybe her father had been right in saying that Felicia aint nothing but a whore like her mother.You know after I kill Felicia, I might just fuck her again before her body gets cold.

Then it will be your turn. You aren't going to get off as easy, because I'm going to make you beg for me to kill you, because I'm not only going to fuck you, I'm going to torture you to the point until you beg me to kill you. And remember this is exactly what RATS get.

Also, just so you know I know everything there is to know about you, all the way down to the restraining order that was lodged against Felicia in 08. Don't fuck with me Darcy, because you will lose.

### III.  DISCOVERY

The United States is complying in full with its pretrial discovery obligations. The government has supplied to the defendant all exculpatory evidence of which it is currently aware and recognizes its continuing duty to fulfill its obligations under *Brady* and *Giglio*.

### IV.  STIPULATIONS

The parties have not yet arrived at any factual stipulations. In a telephone conversation on June 24, 2010, the defendant stated that he intends to wait until after his psychiatric evaluation is conducted before agreeing to any stipulations.

### V. ANTICIPATED LEGAL ISSUES

The United States has filed six motions in limine. First, we sought an order allowing the government to introduce evidence of certain of the defendant's supervised release violations and other prior acts. Second, we requested a court-ordered psychiatric examination pursuant to Rule 12.2. Third, we asked the Court to admit testimony from the government's handwriting expert. Fourth, we sought an order preventing the defendant from referring to punishment or sentencing.

---

[2] A "Form 12" hearing regarding violations of the defendant's grant of supervised release was scheduled for February 25, 2010 in this Court. The matter was subsequently continued.

UNITED STATES' TRIAL MEMORANDUM
CR 10-0305 VRW                    5

Fifth, we sought to exclude evidence and argument relating to the defendant's intent or ability to carry out his threats. Finally, we provided notice of the government's intention to impeach the defendant with his prior convictions.

### A.   Issues Related to the Defendant's *Pro Se* Status

On May 6, 2010, after a thorough *Faretta* hearing, the defendant exercised his right to represent himself in this case.[3] The Court appointed Joyce Leavitt, Assistant Federal Public Defender, as advisory counsel for the defendant. The defendant may continue to insist on proceeding *pro se*, or he may elect to proceed by counsel. However, the defendant has no right to appear partly by himself and partly through counsel. *United States v. Olano*, 62 F.3d 1180, 1193 (9th Cir. 1995) ("defendant does not have a constitutional right to 'hybrid' representation at trial).

Further, the defendant's *pro se* status does not alter the Court's role; no new obligations are imposed on the trial judge by the defendant's decision to represent himself at trial. *United States v. Trapnell*, 512 F.2d 10, 12 (9th Cir. 1975). A *pro se* defendant is subject to the same rules of procedure and evidence as defendants who are represented by counsel. *Faretta v. California*, 422 U.S. 806, 834 n. 46 (1975). The trial judge is under no obligation to become an advocate for, or to assist and guide, a *pro se* defendant. *Trapnell*, 512 F.2d at 12.

### B.   The Government Does Not Oppose the Defendant's Motion to Allot Funds for an Expert Witness.

The Defendant has filed a Motion to Allot Funds for an Expert Witness. In an accompanying Declaration, the defendant stated that the expert witness would "conduct an examination and testify for the defense." Def.'s Declaration, ¶ 2. Because the defendant filed a notice under Rule 12.2(b) of his plans to introduce evidence of a mental condition, the government assumes that the expert for which the defendant now seeks funds is a mental health expert who would testify to a diminished capacity defense. The United States does not object to the defendant's motion to allot funds for an expert witness for this purpose.

---

[3]The defendant is also representing himself with respect to the supervised release violations that are currently outstanding in *United States v. Redden*, CR 07-0802 VRW.

### C. The Defendant's Proposed Verdict Form Is Improper.

The government has submitted a proposed verdict form that allows the jury to indicate "guilty" or "not guilty" for each count charged in the Superseding Indictment. The defendant filed a proposed verdict form in which he listed three choices for the jury:

1. Not guilty as a result of diminished capacity;
2. Not guilty;
3. Guilty

It is not appropriate to offer the jury a separate choice to acquit as a result of diminished capacity. Unlike insanity, diminished capacity is not an excuse. *United States v. Twine*, 853 F.2d 676, 678 (9th Cir. 1988). Diminished capacity is concerned with whether the defendant possessed the ability to form the requisite intent to commit the crime. *Id.* If the jury finds that the defendant did not have that intent, then the government has not proven an element of the crime, and the defendant would be simply not guilty. *Id.*

### D. Voir Dire Should be Restricted to Questions that go to the Impartiality and Credibility of Prospective Jurors.

In a pleading entitled "[Proposed] Voir Dire of Jury Panel," the defendant requested that he be allowed to conduct examination of the potential jurors. The government does not oppose this request, but it does ask that the scope of the defendant's examination be limited to issues related to grounds on which the defendant may exercise potential challenges for cause. The government would object to attempts by the defendant to wrongfully prejudice or bias the jurors during the voir dire process. The government does not object to the specific question the defendant raised in his pleading: whether potential jurors or persons close to them have been victims of rape, mutilation, murder, and severe racial slurs.

The defendant also asked that Court provide him with five extra peremptory challenges. The Court should deny this request. The defendant is not entitled to any additional peremptory challenges, and has offered no grounds for such an exception.

\\

\\

\\

UNITED STATES' TRIAL MEMORANDUM
CR 10-0305 VRW                                7

**E.     The Defendant May Not Reference Facts In Opening Statement That He Does Not Reasonably Anticipate Will Be Supported By Evidence Admitted at Trial.**

It is axiomatic that counsel may not reference facts in opening statement that he or she does not reasonably anticipate will be introduced at trial.  A recitation during opening statement of the defendant's personal history that is never supported by factual evidence introduced at trial is entirely improper.  Such statements may include references to the defendant's background, such as his educational history, childhood, and family ties, his employment, and character traits, such as that the defendant "has always been well liked" or is a "devoted son."

Pursuant to the Court's Order for Criminal Pretrial Preparation, the defendant must provide the United States with a list of witnesses and a short statement of their anticipated testimony, as well as a list of exhibits he intends to introduce a trial.  If the defendant intends to introduce evidence of his background, pursuant to the Court's Pretrial Order, he must provide the United States with a list of defense witnesses and/or exhibits that will used to present this evidence to the jury.  If the defendant references such facts in his opening statement, he must reasonably anticipate that he will be introducing supporting evidence, and there is no reason that he cannot comport with the Court's Pretrial Order by providing a witness and exhibit list to the United States.

The United States respectfully requests that if the defendant intends to reference his background and personal history in opening statement, that he be required to comply with the Court's Pretrial Order and disclose to the United States the witnesses and exhibits he intends to introduce at trial to support these statements.  If the defendant is unsure by the time of opening statement whether such evidence will be introduced, then he should be precluded from referencing his background and personal history during opening statement.

**F.     The Defendant May Not Introduce Evidence of Ms. Garrigan's 1988 Shoplifting Conviction.**

The government plans to call Darcy Garrigan, the victim of the crimes charged in Counts 3 and 4, as a witness.  The government is aware of only one prior conviction: a petty theft misdemeanor in 1988 for which she received a sentence of either two days jail or a fine.  The

UNITED STATES' TRIAL MEMORANDUM
CR 10-0305 VRW                                              8

government moves to preclude any reference to this conviction at trial because it is too remote in time and has little, if any, relevance to her credibility or any substantive issue in this case.

This conviction occurred twenty-two years ago, and is thus well beyond Federal Rule of Evidence 609's ten-year time limit. It can, therefore, be admitted only if, in the interest of justice, the court finds that the probative value substantially outweighs the prejudicial effect. Rule 609(b). This shoplifting conviction has no probative value. It has no bearing on any of the substantive issues in this case and does not reflect on Ms. Garrigan's credibility as a witness. Ms. Garrigan will testify to her relationship with the defendant, the defendant's theft of her truck, money, and gun, and her receipt of the threatening letter. The jury can evaluate her credibility based on her testimony in court and corroborating evidence. For example, the defendant himself admitted, in a letter that he wrote to Lyon County Deputy Sheriff Tustin, that he stole Ms. Garrigan's truck, money, and gun.

Ms. Garrigan has a clean criminal record marred only by a single incident twenty-two years ago when she was nineteen years old. That youthful indiscretion says nothing about her character for truthfulness today. Any reference to it should be precluded by Rules 609 and 403.

DATED: June 24, 2010

Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney

_____/s/_____
ANNA TRYON PLETCHER
PHILIP KEARNEY
Assistant United States Attorneys